[L. A. No. 15756. In Bank.—July 27, 1936.]

IRWIN F. MEGOWAN, Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

[L. A. No. 15757. In Bank.—July 27, 1936.]

ANDREW L. ONSTAD, Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Albert E. Wheatcroft and Bourke Jones, Deputies City Attorney, for Appellant.

Guy Richards Crump, Morton E. Feiler and Roy W. Colegate for Respondents.

SHENK, J.—The plaintiffs filed separate actions for damages for injuries to person and property against the City of Los Angeles and M. E. Meador caused by a collision between a city-owned car operated by the defendant Meador and a car operated by the plaintiff Megowan, with whom the plaintiff Onstad was riding. Judgments were entered in favor of the plaintiffs against both defendants. The defendant Meador has not appealed. The appeal of the defendant city is presented on a consolidated record.

The collision occurred between 7:40 and 8 o'clock on Saturday morning, December 23, 1933, at the intersection of Beverly Boulevard and Highland Avenue in the City of Los Angeles. No point is raised with reference to the issue of negligence or the extent of the damage suffered by the plaintiffs.

At the time of the accident Rex W. Laws was, and for some time prior thereto had been, president of the board of fire commissioners of the City of Los Angeles. The fire commission is a citizen board, has its offices in the city hall and has the power and duty under the city charter to manage, control, regulate and supervise the fire department of the

city. The Buick automobile involved in the accident had been purchased by the city and had been assigned to the board of fire commissioners particularly for "field supervision". Mr. Laws had frequent occasion to use this car in connection with his duties as president and member of the board. Fireman W. T. Evans was accustomed to drive the car for him. On the day before the accident Evans had worked until about midnight and on "line up" next morning he informed Captain Rascoe of the department that Commissioner Laws wished the car at his residence at 251 Gower Street at about 7:45 o'clock. On that morning, the 23d, Captain Rascoe ordered the defendant Meador to take the car and report to Mr. Laws at his home as requested by the latter. Mr. Meador was a fireman, under the direction of Captain Rascoe, had acted as a driver for Mr. Laws and knew the location of his residence. Meador took the car and started on his mission. It was before he arrived at Mr. Laws' home that the accident occurred. Another city car was then dispatched to Mr. Laws' residence, where he was picked up and proceeded on his intended business.

The main contention on the appeal by the city is that the evidence is insufficient to support the findings of the trial court that at the time of the accident the defendant Meador, as an employee of the City of Los Angeles, was operating the city-owned motor vehicle within the scope of his employment.

The plaintiffs insist that the evidence is sufficient to support the finding and in addition that section 1714½ of the Civil Code is broad enough to impose liability on the city by reason of the undisputed facts alone that the car was a city-owned car and that the defendant Meador was then an employee of the city. In the case of *George Brindamour et al.,* v. *Thomas Murray and the City of Los Angeles* (*ante,* p. 73 [59 Pac. (2d) 1009]), this day decided, it was held that ownership of the car alone was not sufficient to impose liability on the city; that the use of city-owned motor vehicles for purely private purposes was unauthorized, and that when it had been properly established in this case that the city employee, negligently operating a city-owned car, was not acting within the scope of his employment the city would not be liable.

On the showing made on the main contention of the city we conclude that the evidence was sufficient to support the finding under attack. ■ Commissioner Laws had authority to use the car on business connected with his duties as president and member of the board of fire commissioners. It would be unlawful for him to use it for his own private purposes unconnected with the performance of his official duties. The fact that his own personal convenience might incidentally be involved would not necessarily relieve the city so long as the main purpose of the use was official in its nature. Captain Rascoe, in the performance of his duties, unquestionably had the power to instruct the defendant Meador to comply with the request of the commissioner and it was not for Meador under the circumstances here shown to question the order of his superior. It was not unlawful nor beyond an authorized corporate purpose to have a city automobile sent to the home of Commissioner Laws to transport him in the pursuit of certain municipal purposes such as on a tour of fire department inspection or for necessary or appropriate supervision of the fire department equipment, property or personnel or for any other legitimate business of the fire commission.

From the facts as they appeared up to the time of the accident an inference was available to the plaintiffs that the car was then being operated for an authorized municipal purpose by an employee acting within the scope of his employment. (*Bushnell* v. *Yoshika Tashiro,* 115 Cal. App. 563 [2 Pac. (2d) 550].)

■ To support the position of the city it would be necessary to hold that the evidence otherwise had the effect of overcoming and dispelling the inference. This evidence relates to the testimony of Commissioner Laws as to what he intended to do with the car involved in the accident and to what was actually done by him with the second car sent out to his home. Mr. Laws testified that he intended to use the first car to go to his official office in the city hall and from there to inspect the condition of engine companies 21 and 22 located at Fifty-second Street near Central Avenue and Main Street just north of Vernon Avenue, respectively, and to purchase some foodstuffs for distribution to the needy by delivery of the same at the residence of another official

of the city south of Slauson Avenue. All of these things were done with the second car as intended.

The city contends that there is no authority in law for the transportation of a city officer to and from his home and his office, and, therefore, the intended purpose of Mr. Laws to use the city car to go from his home to his office in the city hall was unlawful and could impose no liability on the city for the negligence of the driver in making the journey. This contention is supported by the case of *Keeney* v. *City of Salem*, 150 Or. 667 [47 Pac. (2d) 852]. If the purpose of the commissioner was solely to use the city car to go from his home to his office the authority relied upon would be directly in point. But when the further purpose of inspection of fire engine houses is taken into consideration it cannot be held, as matter of law, that the intended use as a whole was not for a proper municipal purpose. The city insists, with considerable merit, that the actual inspection was perfunctory. But courts of review cannot with propriety lay down rules as to how much inspection must be indulged. Each case must rest on its own facts and even if it be assumed that the finding of the court might have been either way on the issue in controversy it cannot be said that the evidence in its support is so unsubstantial as to present a question of law alone.

The determination of the main question renders it unnecessary to comment on other points raised.

The judgments are and each is affirmed.

Thompson, J., Curtis, J., Langdon, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied. Langdon, J., voted for a rehearing.